UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY E. ORMOND, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-cv-1908-DFH-TAB |
| | ) | |
| ANTHEM, INC., | ) | |
| ANTHEM INSURANCE COMPANIES, INC., | ) | |
| and LARRY C. GLASSCOCK | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON PENDING MOTIONS

The plaintiffs in this case are former policyholders of mutual insurance company Anthem Insurance Companies, Inc. ("Anthem Insurance"). Plaintiffs allege claims that stem from the demutualization of Anthem Insurance and the initial public offering of stock in Anthem, Inc. ("Anthem Holding"). The current version of the complaint is the third amended complaint. The court's March 31, 2008 entry dismissed several claims. Dkt. No. 79. The plaintiffs have now moved for leave to file a fourth amended complaint alleging that Anthem Insurance, its chief executive officer Larry Glasscock, and Anthem Holding engaged in a scheme to limit the number of Anthem Insurance policyholders who would become shareholders in the new stock company, to keep the price of shares in the initial public offering as low as possible, to prevent certain classes of former Anthem members from receiving any compensation from Anthem's IPO, and to provide

misleading tax information. The complaint includes claims for breach of fiduciary duty, negligence, breach of contract, negligent tax information, and negligent misrepresentation. Defendant Larry Glasscock has also moved for judgment on the pleadings on the two claims against him: breach of fiduciary duty and negligence. As explained below, the court grants in part and denies in part the motion for leave to file a fourth amended complaint and grants Glasscock's motion for judgment on the pleadings.

I.   *Leave to File a Fourth Amended Complaint*

The plaintiffs move for leave to file a fourth amended complaint. Federal courts liberally grant leave to amend pleadings under Rule 15 of the Federal Rules of Civil Procedure but need not allow an amendment that would be futile, such as where the amended claim would not survive a motion to dismiss. *E.g., Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (affirming denial of futile amendment).

The defendants challenge parts of the proposed fourth amended complaint for three reasons. First, they argue that the Indiana Commissioner of Insurance's October 25, 2001 order approving Anthem's Plan of Conversion renders plaintiffs' addition of a "Southeastern Subclass" and new theories based on allegedly wrongful distribution of stock to Connecticut and Ohio employers futile. Second, the defendants claim that the named plaintiffs do not have standing to bring

claims on behalf of the new "Stock-Recipient" and "Southeastern" subclasses. Third, the defendants argue that fifteen paragraphs in the fourth amended complaint are remnants of already-dismissed securities fraud claims and therefore would not survive a Rule 12(f) motion to strike.

      A.      *The Commissioner of Insurance's October 25, 2001 Order*

The defendants first contend that the court should not permit the plaintiffs to add the proposed Southeastern Subclass because their claims are precluded by the Commissioner of Insurance's October 25, 2001 order, which provided that "only Eligible Statutory Members may receive consideration when the Conversion becomes effective." Dkt. No. 103, Ex. 1 ¶ 22. The order defined Eligible Statutory Members as persons who were statutory members from June 18, 2001 through the "effective date of the Plan," November 2, 2001, during which time they had continuous health care benefits coverage with the same company without a break of more than one day. *Id.* ¶ 24. The proposed Southeastern Subclass would consist of former members of Southeastern Mutual Insurance Company, which merged with Anthem Insurance. Plaintiffs allege these members had a "grandfathered" right to receive Anthem demutualization compensation and did not receive compensation. Fourth Am. Compl. ¶ 27. Members of the proposed Subclass discontinued their coverage at some point before the demutualization plan was submitted to the Commissioner. *Id.* The defendants contend that the order precludes members of the proposed Southeastern Subclass from being

eligible for compensation because they discontinued their policies before the demutualization plan was submitted to the Commissioner. The defendants argue that the order bars the proposed Subclass's claims and renders them futile.

The defendants also argue that the order precludes the fourth amended complaint's allegations that Anthem Holding's distribution of stock to Ohio and Connecticut employers, rather than employees, wrongfully prevented the employees in those states from receiving stock. The order provided: "Individual certificate holders under group Policies issued to groups by Anthem Insurance's Kentucky, Ohio and Connecticut subsidiaries prior to its mergers with those former mutual companies are not Statutory members (the group policy holders are Statutory Members)." Dkt. No. 103, Ex. 1 ¶ 26. The defendants suggest that the order precludes the plaintiffs' theory: "The Department's Order approved the very feature of the Anthem Insurance demutualization that forms the basis of this new theory." Def. Br. 6.

The order does not preclude the proposed Southeastern Subclass's claims or the allegations based on distribution of stock to Connecticut and Ohio employers. This court's March 31, 2008 entry noted that the plaintiffs are not challenging the validity of the Commissioner's order. Dkt. No. 79 at 53. Rather, plaintiffs are asserting common law claims independent of the statutory scheme that gave rise to the order. See *id.* "Indiana courts have consistently held that they lack jurisdiction to hear claims that challenge the decisions of

Commissioners of state agencies who have been delegated legislative authority, but those decisions do not bar these plaintiffs' common law claims." *Id.* at 50.[1] The Commissioner's order does not bar the plaintiffs from adding the proposed Southeastern Subclass or adding allegations that Anthem Holding wrongfully distributed stock to Connecticut and Ohio employers because these additions relate to common law claims.

> B.   *The Named Plaintiffs' Standing*

The defendants challenge the addition of the proposed "Southeastern Subclass" because "none of the named Plaintiffs is a member of" the subclass. Def. Br. 9; see Fourth Am. Compl. ¶¶ 23, 27 (named plaintiffs are not members of the Southeastern Subclass). Therefore, the defendants argue, no named plaintiff has standing to represent that proposed "subclass."

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998), quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974). The named

---

[1] The defendants quoted the court as saying "Indiana courts have consistently held that they lack jurisdiction to hear claims that challenge the decisions of Commissioners of state agencies who have been delegated legislative authority[.]" Def. Br. 7. The defendants did not quote the rest of the sentence: "but those decisions do not bar these plaintiffs' common law claims." Dkt. No. 79 at 50.

plaintiffs must have standing to bring each claim in the class complaint. See *Morlan v. Universal Guaranty Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).

The plaintiffs allege that the defendants injured the proposed Southeastern Subclass members by denying them *any* compensation because the Subclass members discontinued their policies before the demutualization. These claims and injuries are qualitatively different from the claims and injuries allegedly suffered by the named plaintiffs, who claim they were injured when the defendants limited their compensation by mis-allocating shares and attempting to keep the IPO price low. The named plaintiffs do not have standing to bring the proposed Southeastern Subclass's claims, so the Subclass's claims would be futile and may not be added.

The defendants also argue that the named plaintiffs do not have standing to bring the proposed Stock-Recipient Subclass's claims. The proposed Stock-Recipient Subclass is composed of members who received less Anthem stock than they were allegedly entitled to receive. The court agrees that no named plaintiff has standing to represent this new proposed "subclass" because no plaintiff is a member of that "subclass. There is another, equally fundamental problem with this proposed "subclass." What plaintiffs describe as a "subclass" would actually amount to a significant *expansion* of the class identified in earlier versions of the complaint. The third amended complaint defines the class as "all persons who resided in Ohio, Indiana, Kentucky and Connecticut and received cash

compensation in 2001 in connection with the Anthem Insurance demutualization, and the communities comprised of them and their spouses . . . ." Third Am. Compl. ¶ 31 (Dkt. No. 35). This definition of the class did not include individuals who received stock in the demutualization transaction. The court exercises its Rule 15 discretion to deny the motion to add the new proposed class of persons who received stock. The members of that proposed class may bring their own claims in a separate action (if it is not too late to do so – merely calling a group of new plaintiffs a "subclass" does not allow them to take advantage of the rules for tolling statutes of limitations for members of proposed classes). In any event, it is too late to add them to this action.

### C. *Fifteen Paragraphs Alleging Deceptive Conduct*

The defendants ask the court to deny the motion for leave to amend as it pertains to fifteen paragraphs alleging deceptive conduct because the defendants contend that the language could not survive a Rule 12(f) motion to strike. The paragraphs, Fourth Am. Compl. ¶¶ 250-64, are very similar to paragraphs in dismissed sections of the third amended complaint that allege securities fraud. Despite the similarity, the paragraphs are relevant to a claim of breach of fiduciary duty against the defendants, and they can be included in the fourth amended complaint.

Federal Rule of Civil Procedure 12(f) permits courts to strike "any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) motions to strike are disfavored and infrequently granted by federal courts. 5C Charles Wright & Arthur Miller, Federal Practice and Procedure § 1380 (2004). While district courts have discretion to determine whether to grant motions to strike, "they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Id.*, § 1382; see also *Baker v. Westinghouse Electric Corp.*, 830 F. Supp. 1161, 1168 (S.D. Ind. 1993) (motions to strike are granted if language "has no possible relation to the controversy and is clearly prejudicial"), quoting *Abdulrahim v. Gene B. Glick Co.*, 612 F. Supp. 256, 260 n.1 (N.D. Ind. 1985).

Paragraphs 250 to 264 likely would survive a motion to strike, so they are not futile and can be included in the fourth amended complaint. The paragraphs allege a scheme by all defendants to limit the number of shareholders who received stock and to limit the compensation of those who received cash. These allegations bear a "possible relation" to claims for breach of the fiduciary duties of "due care, loyalty, good faith and fair dealing . . . ." See Fourth Am. Compl. ¶ 268. The allegations also do not constitute significant prejudice against the defendants. See *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992) ("Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice.").

II.     *Glasscock's Motion for Judgment on the Pleadings*

Defendant Larry Glasscock has filed a Rule 12(c) motion for judgment on the pleadings. Dkt. No. 91. He argues that the claims against him are barred by the Indiana statute of limitations. Although Mr. Glasscock filed his motion while the third amended complaint was still operative, the court applies the motion to the fourth amended complaint without requiring re-briefing. The fourth amended complaint asserts negligence and breach of fiduciary duty claims against Glasscock, and his motion addresses these claims. See Fourth Am. Compl. ¶¶ 267-84.

In evaluating a defendant's Rule 12(c) motion for judgment on the pleadings, the court must treat all well-pleaded allegations asserted in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the light most favorable to the plaintiffs. See *Pisciotta v. Old National Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (same standard applies to both Rule 12(c) motions and Rule 12(b)(6) motions). A plaintiff need not prove her case in the complaint, but the factual allegations must, if proven, support beyond the speculative level the assertion that the plaintiff is entitled to relief. See generally *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, 127 S. Ct. 1955, 1965 (2007). Judgment is warranted if the factual allegations, seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. See generally *id.* at 1968-69.

Plaintiffs contend that Ohio choice of law principles, and therefore Ohio's four year statute of limitations, apply to their claims against Glasscock. In its March 31 entry, the court said:

> The plaintiffs filed this action originally in the Northern District of Ohio. That court transferred the case to this district under 28 U.S.C. § 1404(a). When a court has transferred a claim to a new venue under section 1404(a), well established doctrine requires the transferee court to apply to state law claims the choice-of-law rules of the transferor state. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 383 (7th Cir. 2003), citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Thus, the Ohio choice of law rules apply to the state law claims.

Dkt. No. 79 at 32.

Glasscock contends, and the court agrees, that the *Van Dusen* rule does not apply to plaintiffs' common law claims against him because he was not added as a defendant until after the case was transferred to this district. Relevant case law is scarce. In *Z-Rock Communications Corp. v. William A. Exline, Inc.*, 2004 WL 1771569 (N.D. Cal. 2004), the court faced essentially the same issue on a motion for summary judgment. The case had been transferred from Florida, so that the *Van Dusen* rule applied to the defendants who had been parties before the transfer. But the plaintiffs had added new defendants after the transfer to California. Those new defendants moved for summary judgment on the ground that California choice of law principles applied, leading to a statute of limitations bar. Judge Alsup agreed and granted the defendants' motion, reasoning that the *Van Dusen* rule, which was designed to discourage forum-shopping by defendants

-10-

(while enabling it by plaintiffs, as in this case), did not apply to the defendants who had been added after the transfer. *Id.* at *5-*6. The court explained:

> Here, there is no concern of forum shopping by the [newly added] AGM defendants. It is undisputed that plaintiffs knew of the AGM defendants' conduct prior to filing their original complaint in Florida. Yet, plaintiffs chose to not name them as parties in Florida. Instead, they waited a year after the transfer to this forum before joining AGM and its officers as defendants. As the master of their complaint, plaintiffs had the choice of selecting a forum for their original complaint and naming the parties. When they chose not to name the AGM defendants in Florida, they had failed to invoke application of Florida's choice-of-law rules to the AGM defendants. This forum is the original forum for the AGM defendants. There is no reason to invoke the law of the Florida court, a court [to] which the AGM defendants were never subjected.

*Id.* at *6; see also *Lombard v. Economic Development Admin. of Puerto Rico*, 1995 WL 447651, at *2 n.1 (S.D.N.Y. 1995) (suggesting same reasoning in dicta).

This reasoning is persuasive, and plaintiffs have not cited any analogous cases holding that the transferor court's choice of law rules apply to a claim against a new defendant added after the transfer. *Van Dusen* was concerned with a defendant's attempt to defeat an asserted claim by transferring the case to a venue where the claim would be unsuccessful. See *Van Dusen*, 376 U.S. at 633-34. In this case, however, the claims against Glasscock were not added until the third amended complaint, after the case had been transferred to this district. Applying Indiana choice of law principles to the claims against Glasscock does not frustrate the plaintiffs' ability to take advantage of the forum where they chose to file their claim. The plaintiffs initially filed their claims against Glasscock in

-11-

Indiana. Federal courts sitting in diversity apply the choice of law principles of the state where they sit, and the *Van Dusen* exception does not apply. Indiana choice of law principles apply to the claims against Glasscock.[2]

Indiana courts consider the statute of limitations to be procedural and therefore governed by the law of the forum. *Lee v. Estate of Cain*, 476 N.E.2d 922, 924 (Ind. App. 1985); *Owner-Operators Independent Drivers Ass'n v. Mayflower Transit, Inc.*, 2006 WL 4552833, at *5 (S.D. Ind. 2006). For the claims against Glasscock, the forum is Indiana. Indiana's statute of limitations for torts is two years. Ind. Code § 34-11-2-4.

The claims against Glasscock were added on August 16, 2006 when the third amended complaint was filed. They do not relate back to the original filing date under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure. The claims for negligence and breach of fiduciary duty are based on the defendants mis-allocating shares to certain groups, not allocating shares to the Southeastern Subclass, and setting the IPO price too low. Fourth Am. Compl. ¶¶ 267-84. As Glasscock argues and plaintiffs do not contest, the latest date that the events creating these claims could have occurred was December 2001, when plaintiffs allege that Anthem paid inadequate compensation to its former members. *Id.*,

---

[2]Contrary to the plaintiffs' arguments, the "law of the case" doctrine does not require the application of Ohio choice of law principles to the claims against Glasscock. The court's previous entry did not decide the specific question presented here: what state's choice of law principles apply to the claims against Glasscock.

¶ 22.  The claims against Glasscock were filed much more than two years after they arose.

Plaintiffs also rely on the "discovery rule" to avoid judgment for Glasscock on the pleadings.  In Indiana, the statute of limitations for tort claims begins to run when "the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another."  *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008), quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992).  The plaintiff need not have knowledge of the wrongful acts; he merely needs to have "enough information to create inquiry notice that, with ordinary diligence, he would have discovered the needed facts."  *Frey v. Bank One*, 91 F.3d 45, 47-48 (7th Cir. 1996) (applying Indiana statute of limitations and affirming judgment on pleadings holding that claim was time-barred).  When the statute of limitations begins to run is generally a question of law, *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 927 (Ind. App. 2003), but it is a question of fact when there are disputed factual issues.  *Monsanto Co. v. Miller*, 455 N.E.2d 392, 395 (Ind. App. 1983).

If the plaintiffs' allegations against Glasscock are true, they could and should have discovered that he injured them more than two years before they added him as a defendant.  The events giving rise to the plaintiffs' claims against Glasscock occurred in 2001.  Members of the Depressed-Price Subclass knew of their compensation in December 2001.  Fourth Am. Compl. ¶ 134.  Members of

the Denied-Stock Subclass knew that they were going to receive cash instead of stock in late 2001. *Id.,* ¶ 214. Members of the Denied-Stock Subclass also could have easily discovered the dramatic rise in Anthem's stock that occurred in late 2001. *Id.,* ¶ 216. This price rise could and should have alerted these two subclasses to the money they lost by virtue of not receiving any (or additional) stock. It was also clear in 2001 that shares had been allocated to certain employers rather than their employees. *Id.,* ¶¶ 159-76.

When combined with public information from Anthem's Indiana and federal filings, the plaintiffs' compensation could and should have alerted them to Glasscock's alleged wrongdoing. Plaintiffs point out that Anthem's SEC statements varied widely as Anthem expanded the size of the IPO and decreased the number of members who would receive shares. Fourth Am. Compl. ¶¶ 90-99. Even though these filings were not distributed to the plaintiffs, they were public documents that the plaintiffs could and should have discovered before 2004. The plaintiffs argue that the SEC filings were inconsistent with the statements made to Anthem members. *Id.,* ¶ 101. These inconsistencies could and should have made the plaintiffs aware that the IPO, as it occurred, differed greatly from the IPO as it was initially represented to them. See *id.,* ¶ 128 (alleging that the IPO generated substantially more cash and issued substantially fewer shares to members than was initially represented to members).[3] Based on this information,

---

[3]The plaintiffs point to other forms of alleged deception by the defendants that became public soon after the demutualization occurred. See Fourth Am.
(continued...)

plaintiffs could and should have known that something went wrong with the Anthem demutualization long before they added Glasscock as a defendant. This was "enough information to create inquiry notice that, with ordinary diligence, [plaintiffs'] would have discovered the needed facts." See *Frey*, 91 F.3d at 47-48.[4]

The plaintiffs also could and should have known that Glasscock was involved in any alleged wrongdoing at Anthem. Glasscock was the CEO of Anthem Insurance. He was obviously deeply involved in the demutualization transaction. The plaintiffs state in the fourth amended complaint: "Glasscock personally directed, authorized and participated in . . . each of Anthem's actions, statements, determinations and decisions alleged in this Fourth Amended Complaint, and personally caused or knowingly allowed them to occur or take place in the course and scope of his official duties, capacities and functions with Anthem." Fourth Am. Compl. ¶ 15. The fourth amended complaint even cites Glasscock's 2001 statements to the press showing his knowledge and involvement in the Anthem demutualization. *Id.*, ¶¶ 80, 129, 144. The plaintiffs had inquiry notice that Anthem acted wrongfully more than two years before they added Glasscock to this

---

[3](...continued)
Compl. ¶¶ 146-50.

[4]Little of the information in the fourth amended complaint was unavailable as the demutualization occurred or in its immediate aftermath. This was a public transaction with many required public filings. The plaintiffs claim that Anthem made its filings in a manner that limited members' access to the filings *at the time they were filed*. However, the filings were public. It is inconceivable that the plaintiffs did not have inquiry notice that the defendants acted wrongfully until 2004.

action. Because Glasscock was the CEO of Anthem Insurance and was openly involved with the demutualization transaction, the plaintiffs also had inquiry notice that Glasscock allegedly acted wrongfully more than two years before they added him. As a matter of law, the Indiana statute of limitations bars the claims against Glasscock.

## *Conclusion*

For the foregoing reasons, the plaintiffs' motion for leave to file a fourth amended class action complaint (Dkt. No. 96) is granted in part and denied in part, and defendant Glasscock's motion for judgment on the pleadings (Dkt. No. 91) is granted. Plaintiffs shall file no later than January 26, 2009 a clean copy of the fourth amended complaint that is consistent with this entry.

So ordered.

Date: January 12, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Dennis Paul Barron
dennispbarron@aol.com

Edward DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Eric Zagrams
eric@zagrans.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Michael F. Becker
BECKER & MISHKIND CO., LPA
mbecker@beckermishkind.com

Anne Kramer Ricchiuto
BAKER & DANIELS LLP
anne.ricchiuto@bakerd.com

Christopher G. Scanlon
BAKER & DANIELS LLP
chris.scanlon@bakerd.com

Kevin M. Kimmerling
BAKER & DANIELS LLP
kevin.kimmerling@bakerd.com

Matthew Davidson Lamkin
BAKER & DANIELS LLP
matthew.lamkin@bakerd.com