UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY E. ORMOND, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) | 1:05-cv-1908-TWP-TAB |
| ANTHEM, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON PLAINTIFFS' MOTION TO STRIKE**

**I.     Introduction**

The dispute before this Court arises from a fifty-nine page memorandum created by Arthur Andersen LLP while acting as an outside actuarial advisor to the Indiana Department of Insurance in connection with Defendants' 2001 demutualization. Plaintiffs seek to strike the Andersen memorandum as an exhibit to Defendants' summary judgment motion and Defendants' motion to decertify class on the grounds that it is unauthenticated and inadmissible hearsay. For the reasons below, this Court finds that the memorandum has been authenticated and is not inadmissible hearsay, and therefore Plaintiffs' motion [Docket No. 386] is denied.

**II.    Background**

Relevant to this order is Defendants' motion for summary judgment filed on May 8, 2010 [Docket No. 263], and Defendants' motion to decertify class filed on March 29, 2011. [Docket No. 363.] Exhibit 40A to Defendants' summary judgment reply brief is a "fifty-nine page memorandum created by Arthur Andersen LLP for the Indiana Department of Insurance in connection with the IDOI's 2001 review of Anthem's demutualization." [Docket No. 414 at 1;

1

Docket No. 371, Ex. 40A.] The same memorandum is also used as Exhibit 9 to Defendants' brief in support of their motion to decertify class. [Docket No. 366, Ex. 9.]

On April 11, 2011, Plaintiffs moved to strike Defendants' use of the memorandum as an exhibit to Defendants' motions for summary judgment and to decertify class on the grounds that the memorandum is unauthenticated and inadmissible hearsay. [Docket No. 386.] The admissibility of this memorandum hinges on the March 11, 2011, deposition testimony of Darryl G. Wagner, a former partner at Arthur Andersen. [Docket Nos. 386, 414.] Specifically, Plaintiffs contend that Wagner's testimony did not authenticate the memorandum and does not satisfy the business records exception because Wagner did not testify (1) who the author was, (2) that he has personal knowledge of the memorandum's content, (3) whether the statements were recorded contemporaneously with the actions described, (4) whether the document was ever finalized, (5) whether the document was ever delivered to IDOI, and (6) whether the document was kept in the regular course of business. [Docket No. 386 at 1–2; Docket No. 421 at 1–2.]

### III. Discussion

At the outset, this Court first notes the distinction between authentication and hearsay since Plaintiffs' arguments and list of objections are somewhat jumbled together. "Authentication, in-and-of-itself, does not assure admissibility, rather, authentication is merely a condition precedent to admissibility." *Nemecek v. Karamacoski*, No. 2:03-cv-346, 2005 WL 1185282, at *3 (N.D. Ind. May 19, 2005). Even if a document is authenticated, there still remain other bars to admissibility, such as relevance and hearsay. *Id.* The Court will therefore consider authentication and hearsay individually and address each of Plaintiffs' arguments accordingly.

A. *Authentication*

Federal Rule of Evidence 901(a) provides that authentication or identification is "a condition precedent to admissibility [and] is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." With respect to reports and memoranda, "[a]uthentication can be established in a variety of ways, including by testimony of a witness with knowledge . . . that a matter is what it is claimed to be . . . and by distinctive characteristics such as appearance, contents, substance, or internal patterns . . . taken in conjunction with circumstances." *United States v. Dumeisi*, 424 F.3d 566, 574 (7th Cir. 2005) (internal quotation marks omitted). Thus, authentication by circumstantial evidence is permissible so long as there is some competent evidence in the record to support a finding that the matter is what its proponent claims. *Id.* at 575.

At Wagner's deposition, he was handed twelve documents, including the Andersen memorandum, and asked a "couple global questions about these documents." [Docket No. 414, Ex. 7 at 14.] Wagner explained that the documents were "true and correct copies" of electronic files from a folder labeled Anthem on his laptop computer.[1] [*Id.*] He also explained that these documents were related to the work that Andersen did in connection with Anthem's demutualization. [*Id.*] Although Wagner could not remember the specific employee or employees who drafted the Andersen memorandum, he explained that the document was drafted

---

[1]Even though Plaintiffs contend that authenticity is in doubt because the memorandum got onto the hard drive of Wagner's current employer, Deloitte Consulting, Wagner explained that every time he gets a new computer the IT Department transfers everything. [Docket No. 414, Ex. 7 at 25.]

3

by someone at Andersen, and such documents are regularly created by Andersen.[2] [Docket No. 414, Ex. 7 at 16.] Moreover, the memorandum contains the Andersen logo, lists Wagner as one of the authors, and is a review of the demutualization of Anthem. [Docket No. 371, Ex. 40A; Docket No. 366, Ex 9.] Wagner's testimony and the distinctive characteristics of the memorandum provide sufficient evidence to authenticate the memorandum.

      B.     *Business records exception*

"[E]ven though a document might be authenticated, other bars to admissibility, such as hearsay, may nonetheless remain." *Nemecek v. Karamacoski*, No. 2:03-cv-346, 2005 WL 1185282, at *3 (N.D. Ind. May 19, 2005). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted therein, and is "inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Marrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998). However, documents that are hearsay may be admissible under Federal Rule of Evidence 803(6), the business records exception, if the party attempting to admit the evidence demonstrates that the document was "kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or otherwise qualified witness." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998). "While Rule 803(6) does not require that the qualified witness be the person who prepared the record or that the witness have personal knowledge of

---

[2]Wagner was the lead partner for the Andersen demutualization, which was a multi-million dollar project requiring a large team of employees. [Docket No. 414 at 4.] As Defendants point out, even though Wagner could not remember who wrote the memorandum ten years after the memorandum was written, he testified that "obviously, it is a report from Andersen" and confirmed that the memorandum was a report "from our team." [*Id.* at 9.] Wagner's recollection is sufficient and perhaps remarkable under the circumstances.

4

the entries in the records, the business records exception does require that the witness have knowledge of the procedure under which the records were created." *Id.* at 338–39 (internal citations omitted).

Wagner's deposition testimony demonstrates that the Andersen memorandum was kept and maintained in the regular course of business in accordance with Arthur Andersen's business procedures.

> Q. "Was it your regular practice to prepare reports like this in connection with engagements like the Anthem demutualization?"
>
> [Objection omitted][3]
>
> Wagner. "Yes."
>
> Q. "Why was that?"
>
> [Objection omitted]
>
> Wagner. "The main reason would be to create documentation of the work that was done in a more detailed way, primarily for the benefit of the client, I would say, but also for our own benefit and our own records."
>
> Q. "Was that the purpose of this particular document, deposition Exhibit Number 8,[4] was prepared?"
>
> Wagner. "Yes, I think that is a fair description."

[Docket No. 414, Ex. 7 at 16.] This line of questioning establishes that the Andersen memorandum was "kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records." *See Collins*, 143 F.3d at 337.

---

[3] Neither party references the objections raised during the deposition.

[4] Exhibit 8 in Wagner's deposition is the same document as Exhibit 40A to Defendants' reply to summary judgment and Exhibit 9 to Defendants' motion to decertify. [Docket No. 386 at 2.]

Wagner also qualifies as a custodian[5] or otherwise qualified witness because he "was the lead partner at Andersen for the actuarial portion of Andersen's analysis of the Anthem conversion and a signatory to Andersen's ultimate actuarial opinion." [Docket No. 414 at 9.]

As Defendants' brief illustrates, each aspect of Wagner's testimony directly addresses each element of the business records exception. [*Id.* at 10–12.] No evidence has been presented to indicate that the memorandum is untrustworthy in any aspect.[6] The Andersen memorandum therefore falls within the purview of Rule 803(6).

### C. *Nonhearsay purposes*

Although this Court finds that the Andersen memorandum falls within the purview of the business records exception, Defendants have also offered the memorandum for nonhearsay purposes. [Docket No. 414 at 13–14.] "An out-of-court statement offered to establish a statement was made and it had an effect on the listener is not contrary to the general hearsay rule." *Schmutte v. Resort Condos. Int'l, LLC*, No. 1:05-cv-0311-LJM-WTL, 2006 WL 3462656, at *8 (S.D. Ind. Nov. 29, 2006). And "[o]ffering testimony to establish background facts leading up to a sequence of events is likewise an ostensibly non-hearsay use of evidence." *Id.*

---

[5]As discussed in the authentication context, the memorandum was stored on Wagner's laptop computer [Docket No. 414 at 8–9] and transferred to his new computer. [Docket No. 414, Ex. 7 at 25.]

[6]Rule 803(6) does not require the person who prepared the document to testify or that the witness actually have personal knowledge of the content in the document. *Collins*, 143 F.3d at 337. Also, the requirement for contemporaneously recorded actions does not apply to 803(6)—this is a requirement for present sense impressions and a then-existing state of mind. *See United States v. Santos*, 201 F.3d 953, 963–64 (7th Cir. 2000). There is also no requirement that the document ever be finalized, only that it is kept in the regular course of business. *See* Fed. R. Civ. P. 803(6). Finally, whether the document was ever delivered to IDOI is irrelevant for the purpose of Rule 803(6); the memorandum only needs to be kept in the regular course of business. *Id.*

6

Defendants contend that the memorandum is offered to "document [Andersen's] own review process and . . . [to show] its advisors were aware of the new actuarial issues raised by Plaintiffs on summary judgment." [Docket No. 414 at 13–14.] Plaintiffs do not dispute Defendants' contention that the memorandum is nonhearsay for the purpose of documenting Andersen's own review process, and only argue that the memorandum "is being offered for the alleged truth of what it asserts—that IDOI was supposedly aware of the cost plus issue, but where no other document in the record substantiates that contention." [Docket No. 421 at 12.]

However, Defendants' argument that IDOI relied on or was aware of the content in the memorandum is not asserted to prove the truth of the content therein. *See Panizzi v. City of Chi. Bd. of Educ.*, No. 07-C-846, 2007 WL 4233755, at *5 (N.D. Ill. Nov. 19, 2007) (offering letters only to show that complaints were in fact made is nonhearsay). The memorandum is only offered to show that IDOI was aware of certain cost plus issues, not to prove the accuracy of the content in the memorandum or the cost plus policies. Thus, Defendants are appropriately offering the memorandum to provide context and to illustrate the impact that the memorandum had on IDOI. *See Bridges v. SVC Mfg., Inc.*, No. 1:09-cv-01013-TWP-TAB, 2011 WL 3349830, at *2 (S.D. Ind. Aug. 3, 2011); *Cotter v. Vill. of Maple Park*, No. 04-C-1794, 2006 WL 218161, at *2 (N.D. Ill. Jan. 25, 2006).

Nonetheless, Plaintiffs claim that nothing in the record substantiates that IDOI received the memorandum, and therefore the memorandum cannot be used to show that Defendants were aware of the cost plus issue. [Docket No. 421 at 12.] Plaintiffs note that the memorandum is a draft and direct the Court to Wagner's deposition in which he testified that he could not recall whether a final version of the memorandum was delivered to IDOI. [Docket No. 414, Ex. 7 at

7

17, 29.] Despite Wagner's inability to definitively state that the memorandum was delivered to IDOI ten years after its creation, Wagner's deposition testimony demonstrates that it was company policy to send such a memorandum to IDOI. Wagner explained "[t]his exhibit appears to be a draft report that we produced during the engagement, which would go to the client." [Docket No. 414, Ex. 7 at 16.] He also explained that "the main reason" for the memorandum was "to create documentation of the work that was done in a more detailed way, primarily for the benefit of the client . . . ." [*Id.*] Finally, when asked "[w]ould it have been regular practice to provide reports like this to its client," Wagner responded "[i]t would have been, I think I already said, standard practice to issue reports, and also standard practice to issue those reports in draft form before finalizing." [Docket No. 414, Ex. 7 at 17.] In light of Wagner's testimony, it defies logic to assert that Andersen drafted a fifty-nine page memorandum, and then disregarded its standard practice by not sending the memorandum to IDOI, especially when Andersen was billing IDOI $150 to $400 an hour. [Docket No. 414, Ex. 6.]

Defendants have offered the memorandum to show that IDOI was aware of certain actuarial issues, and nothing in the record indicates that Andersen deviated from its standard practice and failed to provide the memorandum to IDOI. Accordingly, Defendants also provide a nonhearsay basis that permits the Court to consider the memorandum.

**IV.    Conclusion**

For the reasons set forth, the Court declines to strike Exhibit 40A to Defendants' summary judgment reply brief [Docket No. 371, Ex. 40A] or Exhibit 9 to Defendants' brief in support of their motion to decertify class. [Docket No. 366, Ex. 9.] Plaintiffs' motion to strike the Arthur Andersen memorandum [Docket No. 386] is denied.

Dated:   08/25/2011

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Matthew Thomas Albaugh
BAKER & DANIELS - Indianapolis
matthew.albaugh@bakerd.com

Dennis Paul Barron
dennispbarron@aol.com

Michael F. Becker
THE BECKER LAW FIRM CO., L.P.A.
mbecker@beckerlawlpa.com

Peter R. Bisio
HOGAN LOVELLS US LLP
peter.bisio@hoganlovells.com

Todd S Collins
BERGER & MONTAGUE, P.C.
tcollins@bm.net

T. David Copley
KELLER ROHRBACK, L.L.P.
dcopley@kellerrohrback.com

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Thomas M. Fisher
INDIANA OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Craig A. Hoover
HOGAN LOVELLS US LLP
cahoover@hhlaw.com

Peter R. Kahana
BERGER & MONTAGUE, P.C.
pkahana@bm.net

Kevin M. Kimmerling
BAKER & DANIELS - Indianapolis
kevin.kimmerling@bakerd.com

Cari C. Laufenberg
KELLER ROHRBACK L.L.P.
claufenberg@kellerrohrback.com

Adam K. Levin
HOGAN LOVELLS US LLP
aklevin@hhlaw.com

Neil F Mara
BERGER & MONTAGUE, P.C.
nmara@bm.net

H. Laddie Montague Jr
BERGER & MONTAGUE P.C.
hlmontague@bm.net

Anne Kramer Ricchiuto
BAKER & DANIELS - Indianapolis
anne.ricchiuto@bakerd.com

Lynn L. Sarko
KELLER ROHRBACK, L.L.P.
lsarko@kellerrohrback.com

Christopher G. Scanlon
BAKER & DANIELS - Indianapolis
chris.scanlon@bakerd.com

Paul A. Wolfla
BAKER & DANIELS - Indianapolis
paul.wolfla@bakerd.com

Eric Hyman Zagrans
eric@zagrans.com