UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY ORMOND, et al., On Behalf of Themselves and All Other Similarly Situated,  )<br>)<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>ANTHEM, INC. and ANTHEM INSURANCE  )<br>COMPANIES, INC.,  )<br>)<br>Defendants.  ) | Case No. 1:05-cv-1908-TWP-TAB |

**ENTRY ON MOTION FOR CERTIFICATE OF APPEALABILITY**

In 2001, Anthem Insurance Companies, Inc. ("Anthem") transformed from a mutual company (an entity owned by its policyholders) into a publicly-traded company (an entity owned by its shareholders) via a "demutualization," which essentially involved two steps. First, through a complex and heavily-regulated process, Anthem "demutualized." That is, Anthem's members liquidated their ownership interests in exchange for stock or cash. Second, Anthem embarked on an initial public offering ("IPO") of 48 million shares of stock in its parent company, Anthem, Inc. Unfortunately for Anthem, not only did the demutualization hatch a new publicly-traded company, it also hatched class action lawsuits. The present class action involves the hundreds of thousands of former Anthem mutual members who received cash from the demutualization.

On July 1, 2011, this Court issued its Entry on Defendants' Motion for Summary Judgment ("Order") (Dkt. 446). The Order denied summary judgment on Plaintiffs' tort claim for breach of duty in connection with the pricing and sizing of the Anthem, Inc. IPO but granted summary judgment on all other claims. (Dkt. 446 at 53). In doing so, the Court addressed a

number of novel legal issues, including:

(1) Whether Plaintiffs' tort claims regarding the price and size of the IPO completed as part of the demutualization are barred by Ind. Code § 27-15-15-2, when the Indiana Department of Insurance ("IDOI") approved both the price and the size of the IPO? (Hereinafter, "IDOI Approval issue").

(2) Whether Anthem owed its members common law duties in tort regarding the price and size of the IPO that was part of a demutualization governed by Indiana law? (Hereinafter, "Duty issue").

(3) Whether the Indiana economic loss rule barred Plaintiffs' tort claims regarding the price and size of the IPO? (Hereinafter, "Economic Loss Doctrine issue").

The Court answered each of these difficult and potentially dispositive questions in Plaintiffs' favor. Twenty-one days after the Order, Anthem asked that the Court certify its Order for interlocutory review pursuant to 28 U.S.C. § 1292(b), which will allow Anthem to petition the Seventh Circuit for appeal of the Order. Under this statutory provision, a district judge may certify for appellate review a non-final order not otherwise appealable when certain criteria are met. If the district court grants certification, the Court of Appeals, in its discretion, decides whether to accept the application for appeal. For the reasons set forth below, Anthem's Motion (Dkt. 457) is **GRANTED**.

*Discussion*

Interlocutory appeals are governed by 28 U.S.C. § 1292(b), which provides in part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Certification under § 1292(b) requires four statutory criteria to be met: (1) there must be a

question of law; (2) it must be controlling; (3) it must be contestable; and (4) its resolution must materially advance the ultimate termination of the litigation. *See Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957, 958 (7th Cir. 2000). "There is also a nonstatutory requirement: the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *Ahrenholz v. Board of Trustees of the Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000)

"Unless all these criteria are satisfied, the district court may not and should not certify its order to [the appellate court] for an immediate appeal under section 1292(b)." *Id*. at 676. That said, "[i]t is equally important . . . to emphasize the duty of the district court and of [the Seventh Circuit] as well to allow an immediate appeal to be taken when the statutory criteria are met." *Id*. at 677 (emphasis added). To be sure, these circumstances don't arise with regularity; "[c]ertification is the exception and not the rule." *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill.1995) (citation omitted). The Court now turns to the five criteria, statutory and non-statutory, each of which is addressed in turn.

**A.      Question of Law?**

The phrase "question of law" in § 1292(b) relates to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment [has] raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676. In part, the rationale behind this requirement is that a court of appeals can decide a pure question of law more easily and efficiently than a murky factual dispute, which requires hunting through the record. *See In re Text Message Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010).

3

All three issues set out above – (1) the IDOI Approval issue, (2) the Duty issue, and (3) the Economic Loss Doctrine issue – are quintessential "legal" issues that would not require the Seventh Circuit to wade deeply into the record or sift through a complicated contract. The IDOI Approval issue concerns the meaning of a statutory provision. *Ahrenholz*, 219 F.3d at 676. The Duty issue is intrinsically legal and does not meaningfully relate to specific factual issues. *See Keybank Nat'l Ass'n v. Shipley*, 846 N.E.2d 290, 295 (Ind. Ct. App. 2006) (whether a party owes a duty to another is generally a question of law for the court).[1] Lastly, the Economic Loss Doctrine issue turns on the applicability of exceptions to the Indiana economic loss rule – another clean legal issue.

In a generalized fashion, Plaintiffs counter that resolving these issues would require full knowledge of "myriad underlying facts" and "a detailed inquiry into the documentary record consisting of hundreds of documents." (Dkt. 466 at 7). Tellingly, however, Plaintiffs do not pinpoint any such documents or facts. To be sure, the Seventh Circuit may need to review documents to get up to speed on the backdrop of this lawsuit. That possibility, however, does not alter the fundamentally "legal" nature of these three issues.

**B.   Controlling?**

"A 'controlling question' can exist where resolution of the question will resolve the litigation in its entirety or where it will establish whether a particular claim exists." *Sandifer v. U.S. Steel Corp.*, 2010 WL 61971, at *4 (N.D. Ind. Jan. 5, 2010) (citation and internal quotations

---

[1] In some instances, factual questions "may be interwoven in the issue of duty, rendering the existence of a duty a mixed question of law and fact to be determined by the factfinder." *Foxworthy v. Heartland Co-Op, Inc.*, 750 N.E.2d 438, 441 (Ind. Ct. App. 2001). However, this is not such a case.

omitted). Plaintiffs tacitly concede that the IDOI Approval issue is controlling, but then argue that the Duty and the Economic Loss Doctrine issues are not controlling. In other words, according to Plaintiffs, even if these issues were decided in Anthem's favor, the litigation wouldn't end. (Dkt. 466 at 8).

The Court respectfully disagrees. A reversal on either of these issues would presumably obviate the need for a trial. With respect to the Duty issue, a finding that no fiduciary duty existed would necessarily doom Plaintiffs' fiduciary duty claim. In turn, such a finding could also trigger the application of the economic loss doctrine, thus defeating Plaintiffs' negligence claim. Moreover, if the economic loss doctrine applies, it would likely bar both the negligence claim *and* the fiduciary duty claim. *See CR23, LLC v. Diamond Equip., Inc.*, 2010 WL 5463393, at *2 (S.D. Ind. Dec. 29, 2010) ("A party whose injuries are purely economical cannot recover again in a negligence or breach of fiduciary duty action.") (citation and internal quotations omitted). Further, the Seventh Circuit has previously held that the scope of a state's economic loss rule can be a controlling issue. *See Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 130 F.3d 290, 291 (7th Cir. 1997) ("the scope of Illinois' economic loss doctrine was a 'controlling question of law . . .' in the words of § 1292(b) . . ."). In the Court's view, because all three issues are potentially dispositive, they are certainly "controlling" for purposes of interlocutory review.

### C.   Contestable?

The "contestable" criterion turns on whether "substantial grounds for a difference of opinion" on the issue exist. *Sandifer*, 2010 WL 61971, at *4 (citation omitted). "[A] court faced with a motion for certification must analyze the strength of the arguments in opposition to the

challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Id*. (citations and internal quotations omitted).  Having written and issued the Order, the Court is all too familiar with the "contestability" of these vexing issues.

### 1. *IDOI Approval issue*

The IDOI Approval issue was particularly confounding.  On this front, the Court ruled that in light of Judge Hamilton's prior rulings, it was bound by the "law of the case" doctrine. *Donohoe v. Consolidated Operating & Production Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) ("The law of the case doctrine typically provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citation and internal quotations omitted).  Obviously, the Seventh Circuit will not be bound by the law of the case, and will therefore be able to decide this issue *de novo*. *See Johnson v. Burken*, 930 F.2d 1202, 1204-07 (7th Cir. 1991) (accepting interlocutory appeal of order denying motion to dismiss based on law of case established by earlier state court decision).

Indeed, there is some strong support for Anthem's position that Plaintiffs' lawsuit amounts to an impermissible collateral attack on the IDOI's order approving the demutualization, meaning Plaintiffs' only available remedy was making a timely appeal of IDOI's order (which they didn't do).  Here, IDOI approved the price and the size of the IPO, and Ind. Code § 27-15-15-2 provides that:

> [a]ll petitions for judicial review of, and any action challenging the validity of or arising out of: (1) the approval or disapproval of; or (2) any action proposed to be taken under; any order or determination of the commissioner in connection with a plan of conversion under this article must be filed not later than thirty (30) days after the order or determination is issued by the commissioner.

From this language, a good argument can and in fact, has been made that Indiana's demutualization law preempts the Plaintiffs' claims. The Indiana Attorney General argued this position in its amicus brief: "The common law claims brought by the Plaintiffs must be understood as a collateral attack on the Anthem demutualization – attacks necessarily preempted by Indiana's complex and detailed positive law addressing the same issues." (Dkt. 277 at 15, 21) (also asking the Court to "certify the matter to the Indiana Supreme Court" if it had "doubts about whether Indiana's Demutualization Law preempts Plaintiffs' claims in this case"). Moreover, Indiana law has previously accorded significant deference to agency determinations. *See Indianapolis Water Co. v. Boone Circuit Court*, 307 N.E.2d 870, 873 (Ind. 1974) ("The Commission is entrusted with the authority to control and regulate public utilities . . . As an administrative agency, it is presumed to be qualified by knowledge and experience to perform this function. The regulation of public utilities is a technical field requiring expertise in just the kind of determination before us . . . <u>Litigants in these circumstances cannot take flight from an adequate statutory administrative remedy by seeking sanctuary in the courts</u>.") (emphasis added; citation and internal quotations omitted). As the Indiana Attorney General noted, allowing Plaintiffs' claims to stand "would undermine the [IDOI's] authority." (Dkt. 277 at 22).

More generally, a principled argument exists that Anthem's position aligns with sensible policy. *See* Order at 18 ("Why require an insurance company to follow a detailed statutory approval process for demutualization, including an extensive agency review and approval of the related IPO terms, with the availability of judicial review, if that protracted and thoroughly scrutinized process can subsequently be challenged by 'Monday morning quarterbacks' who think that different terms should have applied to the IPO?"). Along these lines, the Indiana

Attorney General argued that Plaintiffs' claim would render Indiana demutualization law "meaningless" and "discourage insurance companies from establishing domicile in Indiana." (Dkt. 277 at 15, 22). In short, the IDOI Approval issue – a matter of first impression in Indiana – is easily contestable.

### 2. *Duty issue*

In its Order, the Court was faced with the difficult question of whether Anthem, a mutual insurance company, owed Plaintiffs certain duties in tort. Because this was "a novel issue under Indiana law," the Court had to "predict how the Indiana Supreme Court would rule." Order at 46. To arrive at this decision, the Court reviewed: (1) existing case law from other states addressing whether mutual companies owed fiduciary duties to their members; and (2) decisions from Indiana courts addressing when fiduciary duties arise in the context of the relationship between a policyholder and the insurance company. Ultimately, the Court determined that Anthem owed its members duties in tort in connection with the price and the size of the IPO.

The Court stands by its decision. Nonetheless, the Court believes this is an issue where reasonable minds could disagree, as evidenced by the body of New York case law holding that a mutual company did not owe fiduciary duties with respect to claims arising out of a demutualization. *See Shah v. Metro Life Ins. Co.*, 2003 WL 728869, at *13-14 (N.Y. Sup. Ct. Feb. 21, 2003) ("the relationship between policyholders and a mutual life insurer is generally one of contract, and does not give rise to a fiduciary relationship"), *aff'd in relevant part sub nom. Fiala v. Metro Life Ins. Co.*, 6 A.D.3d 320, 322 (N.Y. App. Div. 2004) ("an insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured"); *see also In re MetLife Demutualization Litig.*, 2007 WL 1017603, at *12

(E.D.N.Y. Mar. 30, 2007) (fiduciary duty did not exist in demutualization context because the relationship between mutual insurer and the policyholder is contractual). The case law on this issue is not uniform: Some authority holds that mutual companies owe fiduciary duties, other authority reaches the opposite conclusion. Given the paucity of on-point Indiana authority, the divergent non-binding authority, and the sound arguments on both sides, the Court finds that the Duty issue is contestable.

### 3. *Economic Loss Doctrine issue*

In its Order, the Court ruled that the economic loss doctrine did not bar Plaintiffs' tort claims because an exception to that rule applied: That is, the relationship between Anthem and its members was more than a garden-variety contractual relationship and Indiana has recognized an exception to the economic loss rule where fiduciaries or insurers have assumed specific obligations. Order at 47; *see U.S. Bank, N.A. v. Integrity Land Title*, 929 N.E.2d 742, 745-746 (Ind. 2010). Again, the Court stands by its ruling.

Nonetheless, this ruling is also contestable. Notably, the *U.S. Bank* decision is not on-point with the present circumstances, as in that case, there was no contract between the plaintiff and the defendant. *Id*. at 745 (identifying the absence of a contract as a "critical point"; "[w]ere there to be a contract between Integrity and U.S. Bank, the parties in all likelihood would be relegated to their contractual remedies"). Here, by contrast, the Court concluded that the Plan of Conversion was a contract between Plaintiffs and Anthem. Further, the Indiana Supreme Court has made clear that it has not yet decided what exceptions to the economic loss doctrine exist when there is a contract between the plaintiff and the defendant. *See Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 742 (Ind. 2010) ("[if]

called upon, we might well recognize an exception to the general economic loss rule").

Along these lines, some courts have ruled that where fiduciary duty claims are intertwined with contract claims, the economic loss rule bars the contract claim. *See BGW Design, Ltd., Inc. v. Service America Corp.*, 2010 WL 5014289, at *6 (S.D. Fla. Dec. 3, 2010) (fiduciary duty claim that was "based upon, and inextricably intertwined with, [plaintiff's] claim for breach of contract" barred by the economic loss doctrine); *Schreiber Food, Inc. v. Wang*, ___ F.3d ___, 2011 WL 2611305, at *5 (7th Cir. July 5, 2011) (applying Wisconsin law; fraud claim didn't fall within exception to the economic loss rule because it was "interwoven" with the contract between the parties).

At bottom, while Indiana recognizes exceptions to the economic loss rule, the *scope* of these exceptions remains fertile ground for vigorous debate. *See Trans States*, 130 F.3d at 291 (interlocutory review on question addressing the scope of the economic loss doctrine in Illinois). For these reasons, the Economic Loss Doctrine issue is contestable.

### D. Materially Advance Litigation?

"This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Sandifer*, 2010 WL 61971, at *5 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). As it stands, a three-week long jury trial in this matter is set to begin in June 2012. The Court has every interest in preserving this trial date, if possible. The Court's paramount interest is in materially advancing the ultimate termination of this litigation.

To assess how to best effectuate this goal, a review of the Court's options is instructive. On one hand, if the Court denies interlocutory review, this case will go to trial as scheduled in

June 2012. In light of the seemingly unbridgeable chasm that divides the parties, the likelihood of a post-verdict appeal is strong, if not inevitable.[2] Under this scenario, this case would probably conclude sometime in 2013, at the earliest (assuming, of course, that the Supreme Court does not grant certiorari).

On the other hand, if the Court grants interlocutory certification and the Seventh Circuit accepts, two options are possible. First, if the Seventh Circuit agrees with Anthem's positions, the case will likely end. Not only would this result conserve considerable time and resources, it would also inject immediate certainty into a dispute involving hundreds and thousands of claimants and where, literally, hundreds of millions of dollars hang in the balance. *See Sandifer*, 2010 WL 61971, at *5 ("Interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens . . . Immediate resolution of this issue has the potential to materially advance this litigation because it will potentially save judicial resources and litigant expense.") (citation and internal quotations omitted).

Second, if the Seventh Circuit affirms the Court's Order, the case will return to this Court for trial. Should this occur, there is at least a reasonable possibility that this case will still go to trial as scheduled, in June 2012, meaning, in effect, "no harm, no foul." If, by chance, the trial date must be moved (an absolute worst case scenario), the case, in all likelihood, can still be tried in 2012.

Finally, granting interlocutory review also preserves the possibility of consolidating

---

[2]Plaintiffs' counsel recently represented to the Court that throughout the lifespan of this six-year-old litigation, the parties have never discussed settlement.

11

*Ormond* with *Jorling* (1:09-cv-00798-TWP-TAB) – its virtually identical companion case involving former Anthem members who received stock in lieu of cash – for trial. Faced with this fork in the road, the Court believes that the most prudent course of action is to grant certification for interlocutory review.

**E.     Reasonable time?**

This non-statutory requirement requires little discussion. Anthem waited three weeks from the date of the Order to file the present motion. Plaintiffs argue that this response was "dilatory" and reveals Anthem's "true purpose." The Court is not persuaded.

Given the complexity of the issues at play, this 21-day gap was eminently reasonable. *See Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief & Dev.*, 291 F.3d 1000, 1008 (7th Cir. 2002) (defendants requesting certification 35 and 36 days after entry of order filed within a reasonable amount of time). The parties in this case often produce work product at an astonishing speed, but, in the end, they are humans, not robots. If a three-week gap between reviewing a 53-page order and filing a well-crafted 22-page brief asking for a certificate of appealability is not reasonable, then what is? Moreover, the Court has no reason to believe that Anthem's "true purpose" is to delay. Rather, common sense suggests that Anthem simply wants the Seventh Circuit to review three novel, difficult, and consequential legal rulings that relate to esoteric subject matter.

### *Conclusion*

Certainly, the "preferred practice is to defer appellate review until the entry of final judgment." *Hoffman v. Carefirst of Fort Wayne, Inc.*, 2010 WL 3940638, at *2-3 (N.D. Ind. Oct. 6, 2010) (denying interlocutory review where court was not aware of a difference of opinion –

i.e. issue was not contestable – and a prompt trial was of the utmost importance given that plaintiff's insurance had expired and he was battling numerous physical ailments).  However, district courts have regularly granted certification for interlocutory review in cases where, as here, "the arguments in opposition to the challenged rulings aren't insubstantial" and if defendant "were to prevail on appeal, no trial would be necessary and the litigation would be resolved in its entirety." *Sandifer*, 2010 WL 61971, at *4-5 (certifying order that granted in part and denied in part defendant's motion for summary judgment).

In the Court's view, cases like the present one are precisely what Congress had in mind when it passed § 1292(b).  The issues are novel, purely legal, and potentially dispositive; reasonable minds could easily disagree on these difficult issues; a decision reversing the Order will obviate the need for a protracted and high-stakes trial; and a decision affirming the Order could still allow the current trial date to remain intact.  Under these circumstances, the Court must grant interlocutory certification on the three issues set forth herein.  Thus, for the above reason's, Anthem's Motion for Certificate of Appealability pursuant to 28 U.S.C. § 1292(b) is **GRANTED**.

SO ORDERED:   09/02/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Matthew Thomas Albaugh
BAKER & DANIELS - Indianapolis
matthew.albaugh@bakerd.com

Dennis Paul Barron
dennispbarron@aol.com

Michael F. Becker
THE BECKER LAW FIRM CO., L.P.A.
mbecker@beckerlawlpa.com

Peter R. Bisio
HOGAN LOVELLS US LLP
peter.bisio@hoganlovells.com

Todd S Collins
BERGER & MONTAGUE, P.C.
tcollins@bm.net

T. David Copley
KELLER ROHRBACK, L.L.P.
dcopley@kellerrohrback.com

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Thomas M. Fisher
INDIANA OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Craig A. Hoover
HOGAN LOVELLS US LLP
cahoover@hhlaw.com

Peter R. Kahana
BERGER & MONTAGUE, P.C.
pkahana@bm.net

Kevin M. Kimmerling
BAKER & DANIELS - Indianapolis
kevin.kimmerling@bakerd.com

Cari C. Laufenberg
KELLER ROHRBACK L.L.P.
claufenberg@kellerrohrback.com

Adam K. Levin
HOGAN LOVELLS US LLP
aklevin@hhlaw.com

Neil F Mara
BERGER & MONTAGUE, P.C.
nmara@bm.net

H. Laddie Montague Jr
BERGER & MONTAGUE P.C.
hlmontague@bm.net

Anne Kramer Ricchiuto
BAKER & DANIELS - Indianapolis
anne.ricchiuto@bakerd.com

Lynn L. Sarko
KELLER ROHRBACK, L.L.P.
lsarko@kellerrohrback.com

Christopher G. Scanlon
BAKER & DANIELS - Indianapolis
chris.scanlon@bakerd.com

Paul A. Wolfla
BAKER & DANIELS - Indianapolis
paul.wolfla@bakerd.com

Eric Hyman Zagrans
eric@zagrans.com