UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN T. HEEKIN, <br> MARY E. ORMOND, <br> ESTATE OF MARY A. MOORE, <br> On Behalf of Themselves and All Others <br> Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM, INC., <br> ANTHEM INSURANCE COMPANIES, INC., <br><br> Defendants. | Case No. 1:05-cv-01908-TWP-TAB |

## FINAL ORDER APPROVING CLASS SETTLEMENT

By Order entered on June 18, 2012, the Court granted the parties' unopposed motion for preliminary approval of this class action Settlement Agreement (Dkt. 717). The Settlement Agreement arises from Anthem, Inc.'s demutualization of Anthem Insurance and failure to offer stock for sale to the public at a higher IPO price.[1] The Court certified the class on September 29, 2009 as follows:

> All former members of Anthem Insurance residing in Ohio, Indiana, Kentucky and Connecticut who received cash compensation in connection with the demutualization of Anthem Insurance on November 2, 2001, and the communities comprised of them and their spouses, if any, excluding:
> (i) all employers located in Ohio and Connecticut that maintained Anthem group health insurance policies on their respective employees and retirees and that received demutualization compensation (the "Grandfathered Groups");
> (ii) Defendants, their predecessors and successors in interest;
> (iii) the officers and directors of Defendants, their predecessors and successors;
> (iv) counsel of record in this action and their respective parents, spouses and children; and
> (v) judicial officers who enter an order in this action, and their respective parents, spouses and children.

---

[1] The Court's Entry on Motion for Class Certification (Dkt. 195) and Entry on Defendants' Motion for Summary Judgment (Dkt. 446) include detailed recitations of the background and facts of this case.

Dkt. 195 at 32. The Court has personal jurisdiction over the Class Members and parties, and has subject matter jurisdiction to approve the Settlement Agreement and all exhibits thereto pursuant to 28 U.S.C. § 1331.

## I. **BACKGROUND**

The proposed Settlement is the product of arm's-length negotiations after seven years of aggressive litigation. The Court appointed the firm of Kurtzman Carson Consultants, LLC, to perform all duties set forth in the Settlement as Settlement Administrator. In accordance with the Order of June 18, 2012, the Settlement Administrator sent the Notice of Proposed Settlement to all Class Members. A website and toll-free telephone number with a call center for Class Members was also established. The notices advised all interested parties that they could file comments or objections to the proposed settlement no later than thirty (30) days prior to a Fairness Hearing, which was scheduled for October 25, 2012 at 2:00 p.m. Eastern.

A single objection was filed to the proposed Settlement Agreement by class member Edwin H. Paul ("Mr. Paul") (Dkt. 748) with respect to the proposed *cy pres* distribution award. The Settlement Fairness Hearing under Federal Rule of Civil Procedure 23(3), was held on October 25, 2012, at which the Court heard argument to determine whether the Settlement was fair, reasonable, and adequate; whether the released claims of the Class Members should be dismissed on the merits and with prejudice; whether the Plan of Allocation is fair and reasonable; whether the application for attorneys' fees, costs, and expenses to be submitted by Class Counsel should be approved; and whether the application for Class Representatives' Case Contribution Compensation should be approved. Class objector, Mr. Paul, did not appear at the hearing. At the hearing, the Court orally approved the terms and conditions of the Settlement and dismissed the claims of Class Members on the merits and with prejudice; approved the Plan of Allocation;

overruled the *cy pres* objections; and approved the Class Representatives' Case Contribution Compensation. The Court also awarded Class Counsel's request for reimbursement of expenses and costs, but took the issue of attorneys' fees under advisement.[2] In this Entry, the Court sets forth its findings of fact and conclusions of law relating to the final approval of the Settlement.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Compliance with Rule 23

The Court finds that this action satisfies the requirements of Rule 23 and is properly certified as a class action. The Class Members have at all times been adequately represented by the Class Representatives and Class Counsel. Notice of the Proposed Settlement was provided to Class Members by first-class mail and by national publication notice. The Notice adequately described all the relevant and necessary parts of the Proposed Settlement and informed Class Members of their right to object to the Proposed Settlement. The Court finds the Notice fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process concerns, and provides the Court with jurisdiction over the Class Members.

### B.   The Settlement

Federal courts favor class actions, but a fairness hearing is required to allow all interested parties to be heard and all relevant information adduced so that the court is able to rule intelligently on whether a proposed resolution is fair, reasonable, and adequate. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In making that determination, the Court considers a number of factors relating to the merits and complexity of the claims, the circumstances of the settlement, and any objections to the settlement. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). These factors include, for example, "a comparison of the strengths of plaintiffs' case versus the amount of the settlement offer; the likely complexity, length, and expense of the

---

[2] A separate ruling on the attorneys' fees and costs will follow.

3

litigation; the amount of opposition to the settlement among the affected parties; the opinion of competent counsel; and the state of the proceedings and the amount of discovery already undertaken at the time of the settlement." *Id.* The Court views all these elements in their entirety to assess fairness. *Isby*, 75 F.3d at 1199.

In this case, the Court ordered the parties to mediation on January 3, 2012, and the Settlement was reached after nearly four months of mediation conducted by the Honorable Edward A. Infante. The Settlement provides a substantial monetary benefit to all Class Members and establishes a "common fund" of $90 million, which Defendants have placed into an interest-bearing escrow account. Class administration costs, taxes, and any attorneys' fees, costs, and class representative incentive awards will be paid out of this fund. The net settlement proceeds will then be distributed pro rata to the Class Members based on the number of shares allocated to each Class Member in the demutualization as described in the Plan of Allocation. The gross recovery is approximately $1.80 per share in addition to the $39.60 per share that Anthem paid the Class Members in 2001, which is an average gross recovery of $120.00 per Class Member. The range of net recovery is between $19.00 and $425.00 per Class Member. Additionally, the Settlement provides an incentive award to the two named Plaintiffs of $25,000.00 each.

### C.     Plan of Allocation

As with the approval of a settlement, courts must determine whether the plan for allocation of settlement funds is fair, reasonable, and adequate. *Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005). In this Settlement, there will be two rounds of distribution of the Net Settlement Fund. In Round One, the distribution checks will be mailed to the 707,489 Class Members who received Notice of

Settlement.[3]  Class Members will not be required to file any additional paperwork, which minimizes administration costs.  If sufficient funds remain unclaimed due to uncashed checks after Round One, the remaining funds will be re-distributed pro rata to the Class in a second round of checks—except for those Class Members whose second settlement distribution amount would be less than $10.00.[4]  Any funds remaining after the second round of distributions will be given as a *cy pres* award to the Eskenazi Health Foundation[5]

**D.     Objection**

Only one Class Member, Mr. Paul, out of more than 705,000 has objected to final approval of the Settlement Agreement, focusing on the *cy pres* award (Dkt. 748).  "The authority to make *cy pres* grants to dispose of the remainder of a class action settlement fund is well established."  *Glen Ellyn Pharmacy, Inc. v. La Roche-Posay, LLC*, No. 11-968, 2012 WL 619595, at *1 (N.D. Ill. Feb. 23, 2012); *see In re Mex. Transfer Litig.(W. Union and Valuta)*, 164 F. Supp. 2d 1002, 1031 (N.D. Ill. 2000) ("The Seventh Circuit and other Courts have recognized that *cy pres* contributions are proper and often are part of class action settlements."); *see also Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (approving *cy pres* contribution to legal aid foundation).  Courts in the Seventh Circuit routinely approve of settlement agreements that contemplate the use of *cy pres* contributions to dispose of settlement funds that cannot, as a practical matter, be distributed to class members.  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338,

---

[3] The funds allocated to Class Members whose Notices were returned as undeliverable and whose current addresses could not be found will be held in the Escrow Fund.  Those individuals will receive the amounts due to them if they are located or come forward prior the second distribution.

[4] Class Counsel indicated at the Settlement Fairness Hearing that it would cost more than $10.00 in administrative costs to mail a $10.00 check, thus making it cost prohibitive.

[5] The Eskenazi Health Foundation serves Wishard Health Services, soon to be known as Eskenazi Health.  Its mission is to raise philanthropic support to enable Eskenazi Health to provide quality health care for all without exception.  The Foundation will use the funds for operating costs, specifically to help open and operate a new health care campus on the Indiana University-Purdue University Indianapolis campus.  The Foundation was established in 1985 and has been successful in raising and administering funds that support programs and services provided by Eskenazi Health to all citizens.

345 (7th Cir. 1997) (stating that a *cy pres* fund is "ideal for circumstances in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed"); *Kaufman v. Am. Exp. Travel Related Servs. Co.*, No. 07-cv-1707, 2010 WL 3365921, at \*6 (N.D. Ill. Aug. 19, 2010) (same); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 387 (N.D. Ill. 2011) (noting that *cy pres* distributions in class actions are routine, "particularly 'when locating and ascertaining the status of all individual class members is prohibitively difficult or expensive'" (*quoting McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009); *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1031)).

    The Court finds that in this case, a *cy pres* award is a fair, reasonable, and adequate way to distribute any residual funds that might remain after two rounds of disbursements to Class Members. Although Mr. Paul claims the *cy pres* distribution will be an allocation of "several million dollars," Dkt. 748 at 5, Class Counsel estimates that the residual amount is not likely to exceed $60,000.00, whereas the cost of mailing a third round of distribution checks to as few as half the Class would cost significantly more. Under these circumstances, the Court finds a third round of distributions would be impractical. Having found that a *cy pres* award is appropriate, the Court must consider if Eskenazi Health Foundation is an appropriate recipient of the award.

    Mr. Paul argues the *cy pres* award is inappropriate because the recipient is not related to the underlying claims in the case, nor does it benefit non-claimant class members. Yet in the Seventh Circuit, "the doctrine of *cy pres* and the courts' broad equitable powers now permit the use of funds for other public interest purposes by education, charitable, and other public service organizations." *Superior Beverage Co. v. Owens-Ill., Inc.*, 827 F. Supp. 477, 479 (N.D. Ill. 1993). Mr. Paul cites Ninth Circuit law that sets forth a standard for avoiding "nascent dangers"

that can arise in the settlement of class actions when *cy pres* awards are used. The Ninth Circuit requires a *cy pres* award be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg*, Nos. 11-55764, 11-55706, 2012 WL 3800230, at *5 (9th Cir. Sep. 4, 2012).

The law in the Seventh Circuit is not so restrictive. Courts in this Circuit have approved *cy pres* awards in circumstances where there was a relationship similar to that in this case between the proposed *cy pres* recipient and the underlying litigation. *See, e.g.*, *Glen Ellyn Pharmacy*, 2012 WL 619595, at *1 (approving a *cy pres* award to the Women's Dermatologic Society for residual settlement funds, in a class action where plaintiffs alleged that defendant had improperly sent unsolicited faxes advertising sun-screen skin products; "The Society sponsors public education about the danger of developing skin cancer, including the risks of sun exposure. This program fits well with the subject of the litigation."). *See also In re Ky. Grilled Chicken*, 280 F.R.D. at 387 (approving *cy pres* award to Feeding America, "the nation's leading domestic hunger-relief charity in consumer protection," in class action related to KFC coupons); *Superior Beverage Co.*, 827 F. Supp. at 478, 482 (noting that "[f]unds remaining in antitrust cases have been awarded to law schools to support programs having little or no relationship to antitrust law, competition, or the operation of our economy" and approving *cy pres* awards of unused settlement funds to 14 organizations, only one of which "bears any direct relation to the antitrust source of the funds to be distributed").

In addition to the relationship between the *cy pres* recipient and the underlying litigation, courts consider factors such as the nominee's history of sound fiscal management, the strength of its governance and leadership, and the extent of services performed and number of people

served, as well as any red flags such as adverse publicity or governmental investigations. *See*, *e.g.*, *In re Xpedior Inc.*, 354 B.R. 210, 241 (N.D. Ill. 2006) (citing factors for consideration); *Superior Beverage Co.*, 827 F. Supp. at 480–87 (considering each potential *cy pres* recipient's mission as well as factors relevant to its capacity to carry out that mission). In this case, the Foundation has a clear mission,[6] a strong track record of programming,[7] and responsible management[8] that will use the funds efficiently to achieve goals that are appropriate given the nature of the underlying litigation. The organization routinely manages a sizeable budget,[9] and there are no red flags that give the Court pause about awarding any residual funds from this Settlement to the Foundation.

In sum, Mr. Paul's objection to the *cy pres* award is overruled. The *cy pres* award is fair, reasonable, and an appropriate way to handle any residual Settlement funds under the Plan of Allocation, and the Eskenazi Health Foundation is an appropriate designee to receive such funds. The Court finds that an award to the Foundation would advance the same health care goals and philosophy to which the member-owners of Anthem Insurance subscribed in deciding to purchase and maintain health coverage from a mutual insurer. The pre-conversion Anthem Insurance and the current Eskenazi Health Foundation have strong commitments to creating access to high-quality health care services and cost-effective health care practices. Because mutual insurance companies are owned by their policyholders, they have a particularly strong

---

[6] The Foundation's mission is to raise philanthropic support to enable Eskenazi Health, one of the nation's largest safety net health care systems, to provide quality health care for all without exception. Dkt. 759 at ¶¶ 2–3. Eskenazi Health serves approximately 160,000 patients each year, the majority of whom are low-income patients from Marion County, Indiana. Dkt. 759 at ¶ 5.

[7] *See* Dkt. 759 at ¶ 9 ("The Foundation was established in 1985 and has a successful history in raising and administering funds that supports the programs and services provided by Eskenazi Health to all citizens, especially the most vulnerable.").

[8] *See* Dkt. 759 at ¶¶ 11-12; Dkt. 759-2. B; Dkt. 759-3.

[9] *See* Dkt. 759 at ¶¶ 8, 9.

incentive to not only deliver access to high quality health care, but to do so in the most cost effective manner. Similarly, a key component to Eskenazi Health Foundation's philosophy is providing one of the highest quality, lowest cost health care systems in the United States.

Further, all Class Members in this case had a connection to the geographic area served by the Eskenazi Health Foundation: they were policyholders and owners of Anthem Insurance, an Indiana corporation headquartered in Indianapolis, Indiana, and they were plaintiffs in a class action pending in federal court in the Southern District of Indiana, asserting claims under Indiana law.

Finally, under the Settlement Agreement in this case, Defendants will not make any direct payment to the *cy pres* recipient. Rather, Defendants already have paid the Settlement Amount into an escrow account that is managed entirely by Class Counsel subject to Court supervision. And, the Eskenazi Health Foundation has attested that no party or attorney involved in this litigation has served on the Board or staff of the Foundation. Dkt. 759 at ¶¶ 10, 12; Dkt. 759-2; Dkt. 759-3.

### E. The Settlement and Plan of Allocation are Approved

The Court has reviewed the Settlement in light of the substantive factors outlined by the Seventh Circuit and finds that the Settlement is fair, reasonable, and adequate. First, the amount of Settlement appropriately reflects both the strength of Plaintiffs' case and the costs and risks of further litigation. Class Counsel estimate the $90 million award is between 20% and 40% of the total injury before discounting for risk. As for risks, from a litigation standpoint, this is a complex case that would likely have become a credibility battle between experts. There can be no certainty as to which experts a jury would find more persuasive. From a damages standpoint, the issue would be both complex and hotly contested, requiring expert testimony on sophisticated

methodologies with uncertain results. From an appeals standpoint, the Court has recognized that many issues in this case were "close calls" that might well be reversed on appeal. The outcome of continued litigation is far from certain. In short, the Settlement recognizes the apparent risks and is a fair compromise of Plaintiffs' claims.

Second, the Settlement was reached after ample discovery and litigation sufficient to test the strength of Plaintiffs' claims. In this case, the Settlement was reached after seven years of litigation, including many rounds of dispositive motions, a petition to the Seventh Circuit Court of Appeals, and massive discovery. As a result, Class Counsel had a full understanding of the strength and weaknesses of the claims and the difficulties faced at trial.

Third, the amount of opposition is strikingly low and favors final approval. Of the more than 705,000 Class Members, only one has objected to the proposed Settlement. This objection, as discussed above, is overruled.

Fourth, the opinions of well-respected, competent counsel favor final approval. In the Court's view, both sides are represented by experienced and highly competent litigators. The Settlement was reached after multiple sessions with an experienced and respected mediator, and counsel for all parties have endorsed the Settlement. The Court relies in part upon the considered judgment of counsel for the parties that this Settlement represents a fair, reasonable, and adequate resolution of Plaintiffs' claims.

Fifth, there is no evidence of collusion in reaching the Settlement. As the court in *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997), stated, "No one here has even suggested that this settlement is anything but the product of honest negotiations by otherwise vigorous adversaries. Furthermore, on this record, any such suggestion would be incredible." This case was litigated until the eve of trial, complete

with fully argued *Daubert* motions and motions *in limine*. The parties conducted mediations through a former magistrate judge, and both sides fought hard for favorable settlement terms.

Sixth, the public interest militates in favor of settlement. The Settlement advances the public interest in addition to fairly and adequately compensating Plaintiffs for the harms done. Expenditure of further time and resources by the parties and Court would not guarantee greater returns for the Class Members, but would put a strain on the public's interest in judicial efficiency and economy.

Furthermore, the Court finds that the proposed Plan of Allocation is the most equitable method of distributing the settlement funds among as many members of the Class as can be located after substantial effort. Therefore, it is the Court's firm belief that the proposed Settlement and Plan of Allocation, reached by arms'-length negotiations between vigorous, competent, and highly experienced litigators is fair, reasonable, and adequate. The Settlement and Plan of Allocation are approved.

Finally, Mr. Paul seeks an "incentive fee…for his service as a representative of Class Members in this litigation." Dkt. 748 at 10. An incentive fee award is appropriate where an individual has taken action to protect the interests of the class and the class has benefitted from those actions. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The Court finds, as a matter of fact and law, that Mr. Paul's objection has conferred no benefit to the Class and, as such, he is entitled to no incentive award.

## F.     Release and Injunctions Against Released Claims

The terms of the Settlement Agreement and this Order are declared to be binding on, and to have *res judicata* and preclusive effect on all pending and future claims, lawsuits or other proceedings encompassed by the Release set for in the Settlement Agreement. The "Released

Parties" shall include Anthem Insurance Companies, Inc., and Anthem, Inc., and their past, present, and future successors, subsidiaries, divisions, or affiliates and any of their past, present, and future officers, directors, stockholders, partners, attorneys, and advisors shall be released and forever discharged of any claim, liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description that Plaintiffs have or may have against the Released Parties, whether known or unknown, arising out of or related in any way to Anthem Insurance Companies, Inc.'s 2001 demutualization, the initial public offering of Anthem, Inc. securities in 2001, or the proceeds of said demutualization and initial public offering, including but not limited to any claims that were or could have been asserted in the Action.

Defendants absolutely and unconditionally release and discharge each of the Class Representatives and their counsel and each of their experts from any and all claims and all liabilities of any kind relating to the institution and prosecution and settlement of the Action and any claims made therein. Additionally, all Class Members are permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as Class Members or otherwise), or receiving any other relief from any other claim, lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction which are within the terms of the Release.

### III. CONCLUSION

For the reasons set forth above, the Settlement as proposed is **APPROVED**. Class Member Mr. Paul's objection to the *cy pres* award is **OVERRULED**. Additionally, Mr. Paul's request for an incentive award is **DENIED**. Finally, this action, including all individual and Class claims asserted in it, is therefore **DISMISSED** on the merits and with prejudice.

This Final Order incorporates the Settlement Agreement (Dkt. 716-1) and Plan of Allocation (Dkt. 716-2). The terms of this Settlement and this Order are binding and have res judicata and preclusive effect in all pending and future claims, lawsuits, or other proceedings encompassed by the Release set forth in the Settlement.

By separate order, the Court will enter final judgment and issue its ruling on Class Counsel's request for attorneys' fees and costs and an incentive award for named Plaintiffs.

SO ORDERED.

Date: 11/09/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Eric Hyman Zagrans
eric@zagrans.com

John J. Pentz
ATTORNEY AT LAW
clasaxn@earthlink.net

H. Laddie Montague, Jr
BERGER & MONTAGUE P.C.
hlmontague@bm.net

Neil F Mara
BERGER & MONTAGUE, P.C.
nmara@bm.net

Peter R. Kahana
BERGER & MONTAGUE, P.C.
pkahana@bm.net

Todd S Collins
BERGER & MONTAGUE, P.C.
tcollins@bm.net

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Dennis Paul Barron
DENNIS PAUL BARRON LLC
dennispbarron@aol.com

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP - Indianapolis
anne.ricchiuto@FaegreBD.com

Christopher G. Scanlon
FAEGRE BAKER DANIELS LLP - Indianapolis
chris.scanlon@FaegreBD.com

Kevin M. Kimmerling
FAEGRE BAKER DANIELS LLP - Indianapolis
kevin.kimmerling@FaegreBD.com

Matthew Thomas Albaugh
FAEGRE BAKER DANIELS LLP - Indianapolis
matthew.albaugh@faegrebd.com

Paul A. Wolfla
FAEGRE BAKER DANIELS LLP - Indianapolis
paul.wolfla@faegrebd.com

Adam K. Levin
HOGAN LOVELLS US LLP
adam.levin@hoganlovells.com

Craig A. Hoover
HOGAN LOVELLS US LLP
cahoover@hhlaw.com

Peter R. Bisio
HOGAN LOVELLS US LLP
peter.bisio@hoganlovells.com

Cari C. Laufenberg
KELLER ROHRBACK L.L.P.
claufenberg@kellerrohrback.com

Lynn L. Sarko
KELLER ROHRBACK, L.L.P.
lsarko@kellerrohrback.com

T. David Copley
KELLER ROHRBACK, L.L.P.
dcopley@kellerrohrback.com

Michael F. Becker
THE BECKER LAW FIRM CO., L.P.A.
mbecker@beckerlawlpa.com

Ray Rusnak
660 Center Ave. #113
Martinez, CA 94553