# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN T. HEEKIN, | ) | |
| MARY E. ORMOND, and the | ) | |
| ESTATE OF MARY A. MOORE, | ) | |
| On behalf of Themselves and all Others | ) | |
| Similarly Situated | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:05-cv-01908-TWP-TAB |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHEM, INC., | ) | |
| ANTHEM INSURANCE COMPANIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED ENTRY ON MOTION FOR ATTORNEYS' FEES, COSTS, AND CASE CONTRIBUTION AWARDS

This matter is before the Court on the Plaintiffs' Motion for Attorneys' Fees, Costs, and Case Contribution Awards filed on behalf of attorneys representing the Class. In a separate Entry, the Court approved the Settlement between the parties that established a $90 million common fund to be distributed pro rata to Class Members, after necessary fees, costs, and case contribution awards have been subtracted and granted $614,112.59 in administrative costs. Class Counsel request 33.3% of the common fund as attorneys' fees, $6,243,278.10 in expenses, and $25,000.00 case contribution or incentive awards, to each of the two class Representatives. The Court held a Fairness Hearing on October 25, 2012, at which the litigation expenses, administrative costs, and incentive awards were orally approved. The Court took the request for attorneys' fees under advisement. The Court now rules that Plaintiffs' motion (Dkt. 724) is **GRANTED** *nunc pro tunc* as of November 20, 2012.

# I. <u>BACKGROUND</u>

The Plaintiffs in this class action case are over 700,000 former mutual company members who received cash in exchange for their interests in the demutualization of Anthem Insurance Companies. The dispute in this case was zealously litigated by both sides from 2005 until recently, when the parties, with the assistance of a private mediator reached a Settlement Agreement which was approved by this Court on November 16, 2012 (Dkt. 780). As a result, the background and facts have been described multiple times by both the parties and the Court in numerous entries. The Court will set forth additional facts below as necessary.

# II. <u>DISCUSSION</u>

**A.    Incentive Award**

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 2009). When deciding whether an incentive award is reasonable, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

One Class Member, Mr. Raymond Rusnak, objects to the proposed $25,000.00 incentive awards. He suggests limiting the awards to $1.00 for each named plaintiff. The Court overrules Mr. Rusnak's objection. In this case, the factors listed above are easily met. Mr. Heekin and Mrs. Ormond committed considerable time and effort over the seven years of litigation. See Dkts. 726, 726 (affidavits of Mrs. Ormond and Mr. Heekin). Both have conferred and participated with Class Counsel to make key litigation decisions, traveled to Indianapolis to attend hearings, and

reviewed the Settlement to ensure it was a fair recovery for the Class. Mr. Rusnak's suggestion of a $1.00 incentive award ignores these efforts. In view of Mr. Heekin's and Mrs. Ormond's efforts and the benefits they afforded to the Class, the Court authorizes payment of a $25,000.00 incentive award each to Mr. Heekin and Mrs. Ormond.[1]

## B.    Attorneys' Fees

Class Counsel request 33.3% of the common fund, or $30 million. To determine if the fee is appropriate, the Court follows the *ex ante* approach. This approach asks the Court to assign fees that "mimic a hypothetical ex ante bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011). Courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time" the litigation began. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). When determining market price, courts should look to the contracts entered into by the parties and class counsel in similar cases, information from other cases, and any applicable lead counsel auctions. *Taubenfield v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Additional factors include the quality of the attorneys' performances, the amount of work necessary to resolve litigation, and the stakes in the case. *Synthroid I*, 264 F.3d at 721.

### 1.    Objections

Class counsel seek a 33.3% award of the Settlement fund, or $30 million in attorneys' fees. Out of the over 705,000 Class Members, three Class Members—Raymond C. Rusnak, Edwin H. Paul, and Franklin DeJulius—have objected that the award is excessive. Mr. Rusnak's objection urges the Court to award no more than 10% of the Settlement for attorneys' fees, but

---

[1] In a subsequent filing with the Court, Mr. Rusnak appears to confuse the request for incentive awards and litigation expenses. He argues Class Members were not made aware of any request in excess of $25,000.00. As this objection relates to the incentive award, it is incorrect and does not change the Court's ruling.

provides no reasoning or support for his position. He argues Class Counsel and other attorneys are engaging in price-fixing of outlandish fees. Because Mr. Rusnak fails to address any of the *Synthroid I* factors, or otherwise provide evidence of a reasonable ex ante fee, his objection is overruled.

Mr. Paul's objection recognizes that Class Counsel should be compensated at the market rate, but argues the average fee in the market is "around 25%." Dkt. 748 at 6. Mr. Paul focuses on the "information from other cases" *Synthroid I* factor. Citing studies, Mr. Paul argues the median fee award is 25%, or well below 33.3%. See Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811 (2010) (study of nearly every federal class action settlement from 2006 and 2007); Theodore Eisenberg & Geoffrey Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248 (2010); Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27 (2004) (study of two comprehensive class action data sets covering 1993–2002). Although the Court finds the empirical studies helpful, they do not replace the analysis required under *Synthroid I*. Mr. Paul fails to meaningfully apply the remaining *Synthroid I* factors.

Mr. Paul also argues the Court should utilize a lodestar cross-check in calculating an appropriate fee. In doing so, Mr. Paul overstates the importance of the lodestar method in this Circuit. "[C]onsideration of a lodestar check is not an issue of required methodology." *Williams*, 658 F.3d at 636. Moreover, Class Counsel has provided the Court with a lodestar value in summary reports. The lodestar data was helpful to the Court in providing a clearer understanding of the amount of time spent by class counsel in bringing this lawsuit to resolution in the trial court and to provide a cross-check to assist in determining the reasonableness of the fee award.

For the purposes used by the Court, more detailed billing records are not required and none will be ordered. For these reasons, Mr. Paul's objection is overruled.

Mr. DeJulius's objection argues that the appropriate fee range in megafund class actions is between 10% and 20%, with an average of 15%. He further argues that the commonly-cited 33% rate typically applies in individual cases, where the damages are expected to be no more than a few million dollars." Dkt. 746 at 2. Mr. DeJulius applies *Synthroid I*, focusing on *Newby v. Enron*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) (sliding scale fee award totaling more than $2 billion in fees) and *In re Tyco International MDL Litigation*, 535 F. Supp. 2d 249 (D. NH 2007) (awarding 8.7% of a $3.2 billion dollar recovery) as similar cases to establish the market rate. However, these two cases are easily distinguishable from this case. Most notably, the size of the recovery in both cases was in the billions of dollars. Moreover, despite utilizing analyses different than in this Circuit, both courts in *Enron* and *Tyco* considered similar factors: reasonableness given the circumstances of the cases and percentages awarded in similar cases. The awards in these cases were consistent with those cases with settlement amounts over $400 million. Therefore, the Court finds the actual percentages reached in those cases unhelpful for determining the market rate in this case, which has a settlement of $90 million.

Mr. DeJulius also relies on *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003) ("*Synthroid II*"), which awarded attorneys' fees on a sliding scale. He argues *Synthroid II* mandates a sliding scale fee award. The Court flatly rejects this argument. A sliding scale fee award may be indicative of the market rate and circumstances of a case, but the Seventh Circuit does not require it. *See, e.g., Williams*, 658 F.3d at 636 (reviewing percentage fee award and affirming district court's award). Even if a sliding scale fee were appropriate in this case, Mr. DeJulius has not established why the scale he recommends—33% of the first $20 million, 20%

of the next $30 million, and 15% of everything over $50 million—is reflective of the market rate or the relative risk presented by this case. Furthermore, Mr. DeJulius suggests the Court should stay the proceedings until the Seventh Circuit decides *Silverman v. Motorola, Inc.*, Nos. 12-2339 and 12-2354. The Court rejects this suggestion. *Hubbard v. Midland Credit Mgmt.*, No. 05-0216, 2009 WL 2148131, at *1 (S.D. Ind. July 16, 2009) (noting that district courts can benefit from "knowing how the Seventh Circuit will decide in similar pending cases," but "the work in the district court goes on *except in very unusual circumstances*" (emphasis added)). Mr. DeJulius has provided the Court no reason why this case should be stayed or why the Court should not apply the clearly established law.

Finally, the Court finds Mr. DeJulius's argument that 33.3% awards should only be awarded in "garden variety individual contingent litigation" to be at odds with decisions in this Circuit. *See, e.g., ., Campbell v. Advantage Sales & Mktg. LLC*, No. 09-01430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (McKinney, J.) (awarding one-third of recovery as attorneys' fees); *In re Guidant Corp. ERISA Litig.*, No. 05-1009, slip op. at 2 (S.D. Ind. Sept. 10, 2010) (McKinney, J.) (38% of the common fund); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (Barker, J.) (33.3% of the common fund); Order Granting Plaintiffs' Motion for Approval of Proposed Plan of Distribution of Settlement Funds, Award of Attorneys' Fees and Reimbursement of Expenses, and Award of Class Representatives' Incentive Fee, *In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-00979, Dkt. 732, slip op. at 13 (S.D. Ind. Mar. 31, 2009) (Barker, J.) (awarding 33.3% of the common fund; citing a 2008 data that fee awards of 30% and more were granted in 11 out of 16 cases where the recovery was $100 million or less). The Court has carefully considered Mr.

DeJulius's objections, but finds that he has failed to establish that the market rate, considering all of the *Synthroid I* factors, is between 10% and 20%. The objection is overruled.

### 2.     The Attorneys' Fees Are Approved

As stated in other entries, this case involved Anthem's demutualization, a complex and heavily regulated process where members liquidated their ownership interests in exchange for stock or cash. Anthem embarked on an initial public offering ("IPO") of 48 million shares of stock in its parent company, not only did the demutualization hatch a new publicly-traded company, it also hatched this class action lawsuit on behalf of hundreds of thousands of former Anthem mutual members who received cash from the demutualization. The pretrial matters were fully litigated and on the eve of trial, the parties settled. The Court has considered the quality of the attorneys' performances, the amount of work necessary to resolve litigation, and the stakes in the case, as well as the contracts entered into by the parties and class counsel in similar cases, information from other cases, and any applicable lead counsel auctions.[2]

First, the Court finds that the risk undertaken by Class Counsel was significant, especially considering the lack of similar cases, complex legal theories, and vigorous defense. In particular, this case presented several unique hurdles in that the transaction had been approved by the Indiana Commissioner of Insurance as "fair, reasonable, and adequate", the State of Indiana actively intervened on behalf of the Defendants and the legal theories that survived summary judgment were close calls. Defendants were represented by pre-eminent law firms and attorneys with many years of litigation and trial experience and those counsel provided a vigorous and effective defense. Further, the Court's familiarity with the issues in this case, the parties' presentations at oral arguments and briefing, Class Counsel's presentation at the Settlement

---

[2] Class Counsel submit that they are unaware of any lead counsel "auctions" in cases of this type. Objector Mr. DeJulius provides evidence of auctions in the securities context, but the Court agrees with Class Counsel that auctions in securities actions have little bearing on this case.

Fairness Hearing and presentations in affidavits convinces the Court that the risk of nonpayment weighs in favor of the requested fee.

Second, as this Court has previously stated, "the quality of work by counsel has been impressive, and the sheer quantity of the motions practice has been astonishing". (See Dkt. 446 at 4). The parties briefed and the Court ruled on numerous potentially dispositive motions, including motions to dismiss, for judgment on the pleadings, for summary judgment, and to strike Plaintiffs' experts as well as motions for class certification and decertification. There were numerous trips to the courthouse and the matter was fully prepared to be tried. Though representing multiple law firms, Class Counsel worked as a unified legal team for the benefit of the Class. The origin of the case was with Attorney Dennis Barron, a small firm practitioner who for much of the last four years of the case, worked on this matter on a full-time basis. Eric Zagrans was involved in the case from its inception and when the Washington D.C. law firm where he worked decided not to accept the case, he left the position, returned to Cleveland, Ohio and became a sole practitioner who dedicated much of his practice to this case. Lynn Sarko and the attorneys' of Keller Rohrback L.L.P.'s complex litigation team are national leader in plaintiff's class actions, as are the attorneys from Berger & Montague, P.C. and Becker Law Firm Co., L.P.A. Local counsel from the firm of Delaney and Delaney L.L.C., represented the Class with their usual high degree of skill and professionalism. The Court finds Class Counsel's performance in this case was outstanding as is reflected by the result achieved. The quality work performed by the multiple law firms and counsel has produced a substantial recovery for the Class Members, one of the largest in the Southern District of Indiana. Moreover, the named Plaintiffs attest to their satisfaction with the quality of legal services received.

Third, the Court finds this case required Class Counsel to put forth considerable time and effort. The lodestar calculations illustrate this factor, as Class Counsel and staff completed more than 40,800 hours on this case. This included work on discovery, dispositive motions, an appeal, and intensive trial preparation. Class Counsel's request represents a multiplier of 1.5, which is within range of comparable cases.

Fourth, the Court finds this case had incredibly high stakes. The Defendants faced a multi-million dollar claim for which there was a denial of insurance coverage for any judgment or settlement and were vigorous participants in this litigation. Likewise, the sum of Class Members' total losses was significant, estimated by Class Counsel as between $227 and $448 million. Class Counsel also had a great deal at stake, with the risk of non-payment, burden of advancing litigation costs of over $6 million, and the "opportunity costs" of turning down other lucrative clients.

Fifth, the Court notes that named plaintiffs, Mrs. Ormond and Mr. Heekin, entered into contingent fee agreements with Class Counsel agreeing to pay a fee of 33.3% and up to 45% of the recovery, depending on the stage of litigation. Moreover, Class Counsel and expert Paul Slater have attested that they would not have accepted this litigation, in light of the risks and complexity, with anything less than a 33.3% fee agreement.

Sixth, the Court finds there is support from other cases in this Circuit and nationally to support a percentage market rate of 33.3%.[3] Class Counsel have provided the Court with

---

[3] In addition to cases cited above, see, Dkt. 776-2; *George v. Kraft Foods Global, Inc.*, No. 08-3799, slip op. at 2 (N.D. Ill. June 26, 2012) (one-third fee); *Pavlik v. FDIC*, No. 10-816, 2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011) (one-third fee); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597-600 (N.D. Ill. 2011) (one-third fee); *Martin v. Caterpillar, Inc.*, No. 07-1009, slip op. at 7 (C.D. Ill. Sept. 10, 2010) (one-third fee); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (one-third fee); *Kitson v. Bank of Edwardsville*, No. 08-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (one-third fee); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (one-third fee). *See also Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06-6869, slip op. at 7 (N.D. Ill. Dec. 14, 2009) (35% of the common fund); *Kelly v. Bluegreen Corp.*, No. 08-401, slip

evidence of numerous cases in which common funds over $50 million resulted in 33.3% fee awards. As discussed above, the objectors have failed to establish this fee is unreasonable. The cases provided by Class Counsel are more closely comparable to this one in terms of common fund size, risk factors, and complexity. See Dkt. 776-2. Therefore, for all the reasons stated, the Court finds that a 33.3% attorneys' fee award reflects the ex ante market rate and takes into account the risk of nonpayment. The requested fee is granted.

Additionally, Class Counsel request reimbursement for litigation expenses totaling $6,243,278.10. Having reviewed the expense reports and previously granted the request at the Settlement Hearing, the Court finds the request is reasonable and grants $6,243,278.10 in litigation expenses to Class Counsel.

### III. CONCLUSION

For the reasons set forth above, Class Counsel's request for attorneys' fees in the amount of 33.3%, or $30 million and for $6,243,278.10 in litigation expenses is GRANTED. Class Representatives Mrs. Ormond and Mr. Heekin are each entitled to a $25,000.00 incentive award.

SO ORDERED.

Date:   11/20/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

op. at 4 (W.D. Wis. Oct. 30, 2009) (one-third of common fund); *Perry v. Nat'l City Bank*, No. 05-891, slip op. at 2 (S.D. Ill. Mar. 3, 2008) (one-third award); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *In re Mercury Fin. Co.*, No. 97-3035, slip ops. at 2 (N.D. Ill. July 6, 2001 and July 26, 2000) (one-third fee); *In re Lithotripsy Antitrust Litig.*, No. 98-8394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (noting that "[m]any courts in this district have utilized" the percentage method to set fees in class actions; "33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards"); *Goldsmith v. Tech. Solutions Co.*, No. 92-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (noting that courts in the Seventh Circuit award attorneys' fees "equal to approximately one-third or more of the recovery"); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1252 (N.D. Ill. 1993) (awarding 29% of common fund).

DISTRIBUTION:

Eric Hyman Zagrans
eric@zagrans.com

John J. Pentz
ATTORNEY AT LAW
clasaxn@earthlink.net

H. Laddie Montague, Jr
BERGER & MONTAGUE, P.C.
hlmontague@bm.net

Neil F Mara
BERGER & MONTAGUE, P.C.
nmara@bm.net

Peter R. Kahana
BERGER & MONTAGUE, P.C.
pkahana@bm.net

Todd S Collins
BERGER & MONTAGUE, P.C.
tcollins@bm.net

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Dennis Paul Barron
DENNIS PAUL BARRON LLC
dennispbarron@aol.com

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP –
Indianapolis
anne.ricchiuto@FaegreBD.com

Christopher G. Scanlon
FAEGRE BAKER DANIELS LLP –
Indianapolis
chris.scanlon@FaegreBD.com

Kevin M. Kimmerling
FAEGRE BAKER DANIELS LLP –
Indianapolis
kevin.kimmerling@FaegreBD.com

Matthew Thomas Albaugh
FAEGRE BAKER DANIELS LLP –
Indianapolis
matthew.albaugh@faegrebd.com

Paul A. Wolfla
FAEGRE BAKER DANIELS LLP –
Indianapolis
paul.wolfla@faegrebd.com

Adam K. Levin
HOGAN LOVELLS US LLP
adam.levin@hoganlovells.com

Craig A. Hoover
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com

Peter R. Bisio
HOGAN LOVELLS US LLP
peter.bisio@hoganlovells.com

Thomas M. Fisher
INDIANA OFFICE OF THE ATTORNEY
GENERAL
tom.fisher@atg.in.gov

Cari C. Laufenberg
KELLER ROHRBACK, L.L.P.
claufenberg@kellerrohrback.com

Lynn L. Sarko
KELLER ROHRBACK, L.L.P.
lsarko@kellerrohrback.com

T. David Copley
KELLER ROHRBACK, L.L.P.
dcopley@kellerrohrback.com

Michael F. Becker
THE BECKER LAW FIRM CO., L.P.A.
mbecker@beckerlawlpa.com

Ray Rusnak
660 Center Ave. #113
Martinez, CA 94553